Our next case, Rivera v. Sharp. Thank you. Good morning. May please the court. My name is Charlie and human. And I've referenced represent the appellants here in this matter as I have for the last 14 years. I would like to reserve five minutes for rebuttal. I'm going to refer to the appellants here is choice. Choice did not get what it had agreed to what it was promised. And therefore they didn't have to pay as choices General Counsel said 12 years ago, in his sworn statement choice but not have entered into the settlement agreement without the strong confidentiality terms included in the agreement. Okay. Let's. Yeah, we got a few questions here. Well, it's just launch right. So the district court said and I'm trying to understand your position about why this is wrong. That you appear to want the full benefit of this bargain, and not carry any of the burden. In other words, you want you, you move to enforce you move for 10 force and the other side did too we have an effect cross motions. And so, any argument that you had about the breach of confidentiality provision is something that you're ill positioned to complain about because you've said, I want this agreement enforced. Now, how do we accept the procedural reality of this case which is it comes up to us after a decision on your motion, you're meeting your clients motion for summary judgment to enforce and your assertion that somehow, you should be relieved of the burdens of the, of the contract that you want enforced. Yeah, our position is that we should. Yeah, at this point we will concede that the summary judgment motion should have been denied. We were not entitled to have the dismissal happen. But let's go back in time to when we rescinded the contract that matter was already dismissed the magistrate judge had dismissed the case with precious. We were then still discussing what the final minute details of the written agreement was that was going to memorialize the settlement agreement that had been reached in September of 2009. We were working on those things, nothing to do with the fact that confidentiality was a material term of the agreement from day one, but we needed to get it right. We needed to know exactly what it was that the agreement was, because we had had this problem with Attorney Rohn's office. I have this problem with attorneys wrong. When we rescinded the argument I understand that's your, your claim on appeal but where was that argument press below and what was the finding on this rescission. Yeah, so on January 25 of 2010 we sent a letter that we did not have to pay. And at that point, and based on the material breach of the confidentiality provision that had started on November 25 2009 and continued. Where did you make that argument below, but where did you make this argument and what is the finding on the claim of rescission. As I understand it, I mean my understanding is that you're making that argument now but it's never before a claim that was rescinded. No, we had rescinded the contract, they moved to enforce. We had rescinded and we made that argument in our opposition to the motion to enforce this, so the second motion to enforce. We said the contract was rescinded we had the right to rescind based on material breach. We made that argument in the summary judgment motion and in the reply to the summary judgment motion and the reply to the summary judgment motion, we specifically said the contract was rescinded, we had the right to rescind based on the material breach. Question. For an earlier date. Why had you not already paid what you were due to pay under the settlement agreement. The settlement agreement required a written release as to a written complete release with all the material terms of the agreement, and we were negotiating what those terms were our payment was due promptly after the execution of the settlement agreement, which we did not get a signed settlement agreement from the planet until January 12 of 2010. And I've had, and we have pending in front of the district court appellate division for the last 14 years as well, a case on meeting of the minds and whether a settlement agreement had been reached or not, after we said it was reached. Attorney Ron's office said that it wasn't, we hadn't had a meeting of minds on the terms, the Superior Court agreed we went to trial, we got the verdict, took that up on appeal to the appellate division, we briefed that in 2008, and that matter is still pending in front of the appellate division. So this was an issue that was is that decided or not decided by judge Lewis's decision that loses decision not effectively decide the matter by saying there was a contract, when, when there was a contract. When Attorney Ron signed it, there was a binding contact, which means there was a meeting of the minds. Right. So, and then she said it was breached twice to material breaches of that agreement. And after the first of material breaches, we rescinded the agreement. So we had a binding contract that we then rescinded on January 25 of 2010 in our letter. And then the second motion to enforce the spot. We didn't seek to enforce the agreement until. Sorry, I apologize. If you weren't complete. Now, we didn't seek to enforce the agreement until the 2018 summary judgment motion, but, but once you say, look, no doubt, there was an extraordinary length of time here. But, and, and the courts can, you know, maybe hang their head a little bit on that but that that doesn't have anything to do with the fact that your client chose to seek to enforce the settlement agreement. So, and that motion is a square up your assertion that this is a rescinded contract with the legal position that you've taken in the court, that this is an agreement, and it ought to be enforced. Once you say to the court, we, this is an agreement, it's binding enforce it. Haven't you necessarily walked away from any kind of claim that there's not an agreement. What we're saying is that at the time of the breach we were excused from performing our at the time of the breach, I'm talking about where we are today, Mr hangman where we are today is on appeal from a legal position, taken in court, which is was and still is. This should be enforced it should be enforced the way we like it, but it's an agreement and it should be enforced. How can that coexist with the argument that there's that you rescinded the agreement. The agreement. There was an agreement, there was an agreement with the material confidentiality provision, the material confidentiality provision was breached by the plaintiff, which allowed us to stop performing familiar with your argument, I understand your argument, what I'm asking you to do is to answer what appears to be a logical inconsistency. And maybe I'm just being obtuse, but whether or not you don't have to answer that. But whether or not there was a rescission or an attempted rescission before doesn't all that just like go out the window, once you go to court and say, this is the agreement. We want it enforced doesn't that mean without any question, we're in it. This is an agreement we're in, and we want the court to use the power of government to make it stick. How can that position in court coexist with an argument of rescission, don't those aren't those things just like mutually inconsistent matter and antimatter big explosion like how can they be happening at the same time. Our position is that the, to the extent that we requested dismissal in September of 2018, we probably shouldn't. At that point, with the, but again, up until that point we never requested dismissal, because it was already dismissed. Yeah, but dismissal has, like, I don't even understand how dismissal has anything to do with it, your, your position was still on summary judgment enforce the agreement. Yeah, but that we had in front of us is enforce the agreement that don't make us pay. No, right, we don't have to pay because we are excused in the performance by their to material breaches the district court found that one of the material breaches was waived by our conduct and continuing to get the document finalized, and that the other material breach was waived because later we asked for the court to dismiss the case. And again, and that asking for continued performance afterwards. Okay, I will say, let's, let's, let's move on from that for a second and we just got a few seconds left on your time but let's shift let's assume for the sake of discussion that we didn't think you could say, enforce, but don't hold a star part of the bargain and you were going to be your client was going to be on the hook if we if we thought that we got into the question of prejudgment interest. I mean you've made arguments about that too. Speak to us about our case, and whether or not addy forecloses the prejudgment interest argument you've made, I will concede the addy forecloses the prejudgment interest, if the money was due, our position is that the money was not do during the period of time that the magistrate opinion was in effect saying that you did not have to pay. And if we, if the court says we do not have to pay. We don't have to pay until the court gets that reverse. All right. Okay, that, that helps I understand you're okay. Judge Rob. Okay, then we'll have you back on rebuttal. From Miss Lawrence. Good morning, Ray Lawrence on behalf of the Pelley of nearest river. The court has nailed exactly what we've been trying to articulate with regard to this appeal is that they have never saw precision their position before the district court was that they were entitled to enforcement. We also sought enforcement. She gave the parties exactly what they wanted. They wanted enforcement with her writing into the agreement, a $350,000 liquidated liquidated damages clause and she said, there's no way I can do that. So she provided the relief that everyone requested which was enforcement. Let me, let me ask you this, because there's a factual underpinning here in the district courts decision that I've been wondering about the court. If I write, if I have my facts right here. When we get into January of 2010 choice sends to your client to, to, Ms. Ron's office to your office. Yes. They, the MRI, and what they presumably think is the final form that they want. And then, and your colleague is wrong. She, she makes some hand marked up changes to it and sends it back to him. Yes, and they said they don't they didn't want that to execute it as is. And she's, that's, that's not in the record right though like what they what they come back with and say in response to the, is that in the record that they did something to say we don't want it and we're still in negotiation, because I might have missed it but what it looked like is she marked it up and sent it back. And then, and they did let let her know that in some fashion was unacceptable. But then she signed it and sent it. That's exactly right. Okay. If, if it just standard old contract stuff one book stuff. If there's an offer. And then there's an attempt, a counter offer. Does the counter which is what marking up the contract man account offer, and that's rejected. Is she free at that point to just say okay I'm going back to your original offer or is that offer off the table. Do you understand what I'm trying to ask, not necessarily but in terms of the revisions of the release, just that, that, that there's a, just as, as contract law, there's an offer. It's given to her. She rejects it by marking it up and sends it back. What I'm wondering is, as a matter of law, not even worried about precision just as a straight up matter of contract law. Does the, does she have the right to go back to what she rejected before and resurrected by signing and sending it back, or at that point, you know, does she have to somehow negotiate with them to give it back to her and let her have another crack at it. I guess in terms of offer counter offer our position is when they sent when she sent that handwriting handwritten release back. That was her sending them her her version of the release with her changes, they rejected that, and she in order to just, you know, put this thing to rest signed it signed that version that they then sent back to her without the changes that she made. There you go. That's a big question. As a fact, thank you. As a factual matter, did they resend to her the unmarked up version. Yes. So, so they tendered that offer to her again. Yes, and then she accepted it, and then she signed it and said, you know, let's put this to bed. Thank you. You've resolved the factual question. Okay, she says how she put it to bed because this was going on for a long time. There was just a, it was a, it was a matter of let's get this done now and let it be over with in terms of getting Mr. Proceeds that were due to her and and the district court nailed it. The district court, in her opinion, you can tell that she was not going to be complicit in what was clearly an attempt by the employers to get Mr. Rivera to sign a release, and then using language in that release, say that she breached it months before, in her mind, and in our mind, that was the height of duplicitous conduct. Well, there was, there clearly was a breach. I mean, there was a confidentiality agreement, and, and, and Attorney Rohn filed a public document and exposed the exposed the terms, that's, you really take the position that it wasn't a breach to take the confidential terms of the agreement and put it out there in the public. And which one, the November 2009 filing? Yeah, it happened twice. Thank you for noting that. It didn't just happen once, it happened twice. Well, let's go to the November 2009 filing. You know, it could have been filed unsealed on the docket, on with the court. However, there was a merger clause in that agreement that was signed that says there was no prior breach. Now you've gone past it, right? I understand that you're now in the waiver portion of Judge Lewis's argument. Yes. But it's clear, as a factual matter, whether they waived it or not, that there was a breach, that filing that on the public docket was a breach of confidentiality. I mean, I don't see why there's any margin in it for you to try to downplay that. You just ought to own it. But are you saying that you didn't think that's a breach? I'm not saying it wasn't a... It was not a breach in terms of where we are now with the merger clause. That's the problem. Well, there may have been a waiver. Okay. I understand that. And if... And our argument is, if she was forced then moved to enforce the agreement without this MSA, she would have been successful. Because their whole argument was that they have this agreement that says there's a breach of confidentiality provision that's material, and therefore, you breached it back in November 2009. Remember, this was the second motion to enforce. Motion to enforce. She filed the first one. The first one... Yeah, and if she hadn't put it on the public docket, we probably would never be here, right? I don't... Like, we're here because she filed it publicly and then wrote him a note and said, that's what you get. Your Honor, could it have been done differently? Yes. Oh, my God. Does it excuse performance? No. That's done. That's where we are today. Do we get from there to the situation where now they get to non-perform in terms of, don't pay the 350 and her case gets dismissed. That's what they're seeking for. They want enforcement of this agreement. So, I don't believe that those prior acts gives them the justification for the enforcement relief they're seeking. They sought before the district court and they sought now, mainly because they requested specifically that she sign this merger clause. And I just don't understand why they would think that... I get your argument that that takes care of the first one. How does that manage to address the second public filing? How does it manage that? Well, in terms of the second one, they didn't ask for rescission. And that's what the district court said. The district court says, if you had asked for rescission, if you had asked for damages, maybe we'd be in a different ballgame here. But you didn't ask for it. I have also argued, and I think it's a correct interpretation, is that they themselves have filed terms on the docket when seeking enforcement. Did they expose the sum of money? Yes, they did. And we demonstrated that. They put on the docket that $25,000 of her funding was supposed to go towards back pay. That's part of the settlement amount. Okay. So that, you think, is the amount and the same as publicizing the full amount of the... Yes. And then in moving for summary judgment, they cut and pasted terms of the agreement on the docket. So I don't like things being used as a sword and a shield. And, you know, there's an old saying, what's good for the goose is good for the gander. Well, you don't see a material difference between putting the whole document out and putting parts of the document out. If the agreement you're relying on says all terms are to be treated confidential, you cannot pick and choose which terms you are going to challenge and what terms not to. I mean, if you look at their summary judgment briefing, and we put all of this in the record when they filed their motion to have the district court record sealed before your court. And we demonstrated just how much of that very same agreement that the employers themselves put on the docket as a part of this whole enforcement mechanism, this court enforcement proceeding before the district court. They have just chosen to pretend as if the $350,000 was somehow the only term that was supposed to be kept confidential when that's not what the agreement says at all. OK. So besides not ever seeking rescission, they sought enforcement. They unequivocally denied any request for damages repeatedly. We highlighted this all in our brief. I just don't see how we get to the point where this judge, who I believe the standard of review is clearly erroneous, has done anything that reaches a clearly erroneous standard. When did you answer the assertion that Mr. Engelman has made that they did ask for rescission in the district court, that they argued it in their papers, including in their reply brief? They did not. And it was a part of the entire briefing. It is not. And that's why when we saw it as an opening brief that we rescinded, that became the biggest shock I've seen because I know for sure that was not the relief that they sought. They did not seek rescission. They sought enforcement. And as a part of enforcement, they wanted her to write in a liquidated damages clause of $350,000. They've never sought rescission because rescission would have meant that you put the parties back to where we were before there was settlement. That was never the relief that they sought. They've never sought damages. They've never sought rescission. They sought enforcement. And they repeated it over and over again before the district court. And the district court was clear in her opinion, I am giving you the relief that you asked for enforcement of this agreement. I know they had a bunch of ancillary issues about banks analysis and the failure to do a banks analysis. I don't know if you have any questions with regard to that at all. What else was there? I mean, nothing in this particular case reeks of harmful error, which is what this court has to figure out, especially in this old case. This case is very old. Is there any reason for us to kick this case back to the district court because she did something harmful here? And I just don't see how they meet that standard. I think that's all I have. I know I have to be before you at 1 o'clock in the Claxton case. So unless there's any more questions. I don't have any judge made to draw. Thank you very much. Thank you, Miss Lawrence.  I think it's appropriately opted to pursue the alternate option of excused performance page 13 of 15 of our reply brief in the joint appendix at 511. We argued it below. That's what the excuse performance is what we asked for. We were excused from our performance based on their material breach. So, wait, you think that saying enforce this, but give us but excuse our performance is the same as saying rescission from. Right. Well, rescission means treat the contract as if it never existed. It doesn't mean hold the other side to the contract and let us out at that point. Again, in January of 2010, when they finally agreed to what the terms of the settlement agreement were, and that they had already and we're continuing to materially breach that material breached it in November. What they were arguing below. We have this whole waiver of waiver issue. Stick with me. Stay on the point. I'm asking, which is just a pure legal question. You're quoting from what you say is the assertion of rescission, and it's language that says, excuse our performance. Right. Do you have any legal authority for the idea that excusing one side's performance, but holding the other side to perform is the same as or equivalent to a rescission of a contract. I cannot give you a site for that. I may be incorrect because it doesn't because rescission means the contract is gone. It's not excuse our performance and hold the other side. Right. Right. But at the point where we are, if we, if we go back to January of 2010, when we finally documented up what the agreement is, and it has been materially breached. We are entitled to excuse performance. We do not have to do anything further at that time. What would happen subsequent to that is, and if what had happened at that time, when we were excused from further performance was that the contract was already mean that the district court case was already dismissed with precious. That's where we were when we made that decision. We had not waived anything. We were never given an opportunity to argue a brief waiver. That is a reversible error. If you're going to rely on waiver, we had an opportunity to put on evidence. Yes. Do we do we ever do we have to even think about waiver, when, when there is a signature on the contract that says nobody is breached the confidentiality of this agreement. No, the parties can covenant that they have not breached. Yeah, but it's a representation, it says choice was coveting that we haven't reached. Well, we can't cover it for what they've done or not done and we can't cover it for what they do in the future. No, but you can make it a statement that that you can be held to which is the parties covenant that at no time prior to the date of this release, have the parties reviewed discussed or disclosed or early in writing, but the parties, that's a statement that is not forward looking it's backward looking. Right, but we covenanted that we had not as the parties, right, our parties, I just read it too right but we are not saying that they have not covered it I mean we can't, I can't, I can't, I can't engage on an argument where you're telling me that the language that I'm reading to you, the parties, isn't it doesn't say choice. It says the parties the parties to the agreement are the choice entities, and Miss Rivera, and it says the parties covenant mean that they will not reach in the future doesn't it says that at no time prior to the date of this. And then, have they discussed disclosed etc. That's the, that's the language that got picked right and then the next language is in the future the same language the parties covenant that they will not reach. And so, but it doesn't deal right, but that wipes out the November stuff now we're talking about 2010 stuff, and I understand you've got an argument about that. But, but your assertion that there's reversible error because of the decision that the district court made that there was waiver. I don't see how you get traction on that when you guys signed a document, we did not sign the document. Oh, we did not sign the document we sent the doc, that language had never changed we did not sign the document after they breached. Oh, have you have you asked for us to enforce it. No, we've asked you in this appeal we've asked you to remanded say that there was not a waiver vacate the decision and reverse the district court to enforce that would have been a better way. We asked the district court to enforce the material that there was material breach and that we're not obligated to pay. Okay. Thank you very much. All right, we got. We have the arguments we'll take them out under advisement and appreciate Council being here and recess.